UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
ANGELO LUGO,

                                                 **REPORT AND**
                                                 **RECOMMENDATION**
                       Plaintiff,           2:19-cv-07150 (JMA) (JMW)

      -against-

ALLSTATE INSURANCE COMPANY,

                     Defendant.
-----------------------------------------------------------------------X

**A P P E A R A N C E S:**

Jonathan A. Tand, Esq.
The Tand Firm
300 Old Country Road, Suite 351
Mineola NY 11501

     -and-

Jon L. Norinsberg, Esq.
110 East 59th Street, Suite 3200
New York, NY 10022
*Attorneys for Plaintiff*

*No Appearance by Defendant*

**WICKS**, Magistrate Judge:

      Plaintiff Angelo Lugo ("Plaintiff" or "Lugo") commenced this civil action on December 20, 2019, pursuant to the Age Discrimination in Employment Act ("ADEA") and the New York Human Rights Law ("NYHRL").[1] In short, Lugo alleges that Defendant Allstate Insurance

---

[1] Plaintiff's Complaint briefly mentions the NYHRL and "state law claims" but only states one claim for relief: "Unlawful Discrimination on the Basis of Plaintiff's Age in Violation of the ADEA." (*See* DE 1 at III; ¶¶ 1-2, VII.) While Plaintiff does not neatly plead a separate cause of action based on state law claims under the NYHRL, "such clarity is not required under the federal rules." *Zonszein v. Bache Halsey Stuart Shields, Inc.*, No. 83 CIV. 317-CSH, 1985 WL 1819, at

1

Company ("Defendant" or "Allstate") unlawfully discriminated against him based upon his age. Before the Court on referral from the Honorable Denis R. Hurley[2] is Plaintiff's motion for default judgment. (DE 18.) For the reasons that follow, the undersigned respectfully recommends that the Plaintiff's motion be DENIED in its entirety.

## FACTUAL BACKGROUND

Plaintiff is a 51-year-old male who resides in Nassau County, New York. (DE 1, ¶ 1.) Plaintiff began working for Allstate in or around 1990 as a personal line representative. (*Id.* at ¶ 4.) Over time he held various positions such as clerical manager, total loss representative, agent in the centralized theft department, and adjuster defending damages in the casualty department. (*Id.*) In either 2000 or 2001, Plaintiff began working a position at the negotiation desk in the casualty department, a position he held until his termination on January 31, 2017. (*Id.* at ¶ 5.)

In November 2013, an individual by the name of Robert Marinello took over as "Claims Leader" and made significant changes to Allstate's management practices. (*Id.* at ¶ 6.) Beginning approximately three months after Mr. Marinello's appointment, Plaintiff alleges Allstate's management began to target him. (*Id.* at ¶ 6.) Plaintiff alleges the following instances of targeting:

(i) Plaintiff was blamed for a verdict in excess of policy limits that was delivered in one of Plaintiff's cases while Plaintiff was out sick notwithstanding Plaintiff's efforts to obtain authority to settle the matter within the limits of the policy (*id.* at ¶ 7);

(ii) In 2014, Allstate's management started taking files that were ready for review from the more senior employees and giving them to younger employees (*id.* at ¶ 8);

(iii) In 2015, Allstate's management merged the "repped" (represented) and

---

*2 (S.D.N.Y. June 25, 1985). "All that is required is that [Allstate] be given fair notice of the various claims it must meet." *See id.*

[2] On July 11, 2022, this case was reassigned from the Hon. Denis R. Hurley to the Hon. Joan M. Azrack (*see* Electronic Order, dated July 11, 2022).

        "unrepped" (unrepresented) cases together and gave all the easier cases to younger representatives whereas older representatives, such as Plaintiff, were assigned complex multi-party case files (*id.* at ¶ 8);

(iv)    The term "sunsetter" was used by Allstate's management for anyone tenured over 12+ years to indicate their responsibility to start creating the next workforce (*id.* at ¶ 10);

(v)    In or around 2015, Allstate's management created a concept of "mentoring," forcing older employees to train younger employees who would become their replacements, instead of receiving formal training from management. This put more work on the older employees (*id.*)

(vi)    Plaintiff was almost always selected for discretionary "monthly progress meetings" to be evaluated although there was no baseline for evaluations and Plaintiff was not given target assessments or informed as to how he was being evaluated (*id.* at ¶ 12);

(vii)    Younger representatives were acknowledged for positive customer surveys, while Plaintiff was not (*id.* at ¶ 13);

(viii)    Following a 6-month absence from work due to a family emergency, Plaintiff's manager commented that he didn't expect or think Plaintiff would return to work (*id.* at ¶ 14);

(ix)    Following his return to work, Plaintiff's work was specifically targeted and constantly critiqued (*id.* at ¶ 15);

(x)    While most employees were allowed to attend an offsite destressing program called "Fitness for Life," Plaintiff was told he was not allowed to attend because a regional claims manager "didn't think it was a good idea" (*id.* at ¶ 16); and

(xi)    Plaintiff was fired without warning for "unacceptable production," was unable to return to his desk to collect his things and was escorted to his car (*id.* at ¶17).

    Plaintiff alleges that Allstate exhibited a pattern and practice of removing other older co-workers. (*Id.* at ¶ 18.) Specifically, Plaintiff alleges his colleagues Vince Candela (over 65-years old) and Joseph Dissler (in his late-40s) preemptively retired or were also terminated after experiencing the same targeted harassment as Plaintiff. (*Id.*)

3

## **PROCEDURAL HISTORY**

On December 20, 2019, Plaintiff commenced this action against Allstate asserting unlawful discrimination on the basis of Plaintiff's age in violation of the ADEA and NHL. (DE 1.) Magistrate Judge Anne Y. Shields[3] scheduled an initial conference for April 8, 2022, which was ultimately cancelled due to onset of the COVID-19 pandemic. (Electronic Order, dated March 31, 2020.) On July 13, 2020, Plaintiff filed a motion for extension of time to serve the Complaint, which was granted by the Court. (DE 7; Electronic Order, dated July 15, 2020.)

By March 9, 2021, Plaintiff had still not yet served Allstate with the Complaint, and so the Court issued an order for Plaintiff to show cause in writing as to why the action should not be dismissed pursuant to Fed. R. Civ. P. 4(m). The very next day, on March 10, 2021, Plaintiff filed an affidavit of service stating the summons for Allstate was "personally served. . . on the individual" at 878 Veterans Memorial Highway, Hauppauge, NY 11788, on August 24, 2020, sworn to on August 24, 2020. (DE 10.) Plaintiff's counsel further submitted a letter explaining that "[t]he complaint in the instant matter was served in August of 2020" and that he "believed that the affidavit of service was filed previously by office staff but upon receipt of the court's prior order, learned that the affidavit was not filed." (DE 11.) Counsel further asserted that since service, he had received no correspondence from Allstate or its attorneys. (*Id.*) The Court withdrew its order to show cause and directed Plaintiff to request a certificate of default and subsequently move for default. (Electronic Order, dated March 11, 2021.)

Plaintiff promptly requested a certificate of default. (DE 13.) However, Plaintiff's request was denied by the Clerk because the "affirmation in support of the request [did] not demonstrate,

---

[3] This case was reassigned from the Hon. Anne Y. Shields to the undersigned on May 24, 2021. (*See* Electronic Order, 05/24/2022.)

as required by Local Rule 55.1(b)(3), that the pleading to which no response has been made was properly served." (Electronic Order, dated April 19, 2021.)  On April 22, 2021, Plaintiff filed another affidavit of service, sworn to on April 21, 2021, this time stating that service was made on "Jodie Irwin, who is designated by law to accept service of process on behalf of Allstate Insurance Company" on August 24, 2020.  (DE 14.)  The affidavit of service further provides that service was accepted by Ms. Irwin as an authorized representative outside of the building bearing the company name because COVID-19 regulations limited the process server's ability to enter the building.  (*Id.*).

On May 27, 2021, the Clerk for the Eastern District of New York issued a certificate of default against Allstate.  (DE 16.)  On December 29, 2021, Plaintiff filed the instant motion for default.  (DE 18.)

## **LEGAL STANDARD**

There is a two-step process for the granting of default judgments under Fed. R. Civ. P. 55.  First, the Clerk of the Court enters default when a party fails to plead or otherwise defend the action.  *See* Fed. R. Civ. P. 55(a); *see also* Loc. Civ. R. 55.2.  Second, after the clerk's certificate of default is issued and posted on ECF, a party may apply or move for entry of a default judgment.  Fed. R. Civ. P. 55(b); *see also* Loc. Civ. R. 55.2(b).

The decision to grant a motion for default is left to the sound discretion of the district court.  *United States v. Dougherty*, CV 15-554 (ADS) (AKT), 2016 WL 5112063, at *3 (E.D.N.Y. Aug. 1, 2016), *report and recommendation adopted* by 2016 WL 4705549 (E.D.N.Y. Sep. 7, 2016).  A default constitutes an admission of all well-pleaded factual allegations in the complaint, except those relating to damages.  *See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992); *see also Joe Hand Promotions, Inc. v. El Norteno Rest. Corp.*, No. 06 CV

5

1878(RJD)(JMA)., 2007 WL 2891016, at *2 (E.D.N.Y. Sept. 28, 2007) (finding that a default constitutes an admission of all well-pleaded factual allegations in the complaint and the allegations as they pertain to liability are deemed true).

Even though a plaintiff's claims are deemed admitted upon default, the Court must nevertheless determine whether the admitted allegations satisfy the legal elements of the causes of action. That is, a plaintiff must still demonstrate that the allegations set forth in the complaint state valid claims. *See City of N.Y. v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 137 (2d Cir. 2011) (suggesting that "a district court is 'required to determine whether the plaintiff's allegations establish the defendant's liability as a matter of law'" prior to entering default judgment) (quoting *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009)) (alterations omitted). In short, before a motion for a default judgment can be granted, the court must ensure that (1) Plaintiff satisfied all required procedural steps in moving for default judgment (*see* Local Civ. R. 55.2); and that (2) Plaintiff's allegations, when accepted as true, establish liability as a matter of law. *See Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009).

## ANALYSIS

### I. JURISDICTIONAL ISSUES

#### A. Service on Allstate and Personal Jurisdiction

Before obtaining a default judgment, a plaintiff must establish proper service of the Summons and Complaint on the defaulting party pursuant to Rule 4 of the Federal Rules of Civil Procedure. *Advanced Cap. Com. Grp., Inc. v. Suarez*, 2013 WL 5329254, at *2 (E.D.N.Y. Sep. 20, 2013) (adopting report and recommendation). When considering a motion for default, a court may "assure that it has personal jurisdiction over the defendant." *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 133 (2d Cir. 2011) (citation omitted).

6

Service of process is governed by Rule 4. *See* Fed. R. Civ. P. 4. Rule 4(h)(1) states that service of process on a corporation must occur by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made" (Fed. R. Civ. P. 4(e)(1), 4(h)(1)(A) ), or "by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process." *Id.* at 4(h)(1)(B).

Here, New York Civil Practice Laws and Rules § 311 governs service upon a corporation and like Rule 4(h)(1)(B) provides that "[p]ersonal service upon a corporation. . . shall be made by delivering the summons. . . to an officer, director, managing or general agent, or cashier or assistant cashier or to any other agent authorized by appointment or by law to receive service." *See* C.P.L.R. § 311 (a)(1). "Since CPLR § 311 was based on the same language as Rule 4(h)(1)(B), courts have construed the federal and state provisions in *pari materia*." *Wilson v. WalMart Store, Inc.*, No. CV 15-4283 (JS)(GRB), 2016 WL 11481723, at *2 (E.D.N.Y. Aug. 22, 2016), *report and recommendation adopted sub nom. Wilson v. Walmart Stores, Inc.*, No. 15-CV-4283(JS)(GRB), 2016 WL 5338543 (E.D.N.Y. Sept. 23, 2016).

"In tendering service, the process server may rely upon the corporation's employees to identify the individuals authorized to accept service." *Old Republic Ins. Co. v. Pac. Fin. Servs. of Am., Inc.*, 301 F.3d 54, 57 (2d Cir. 2002). "As long as the process server's reliance on corporate personnel is reasonable, the defendant may not later complain that it lacked notice even if the complaint was mistakenly delivered to a person who was not authorized to accept service." *Id.* (*citing Fashion Page, Ltd. v. Zurich Ins. Co.*, 50 N.Y.2d 265, 273-74 (1980) ("[W]hen the corporation is regularly doing business in the State, it generally cannot be heard to complain that the summons was delivered to the wrong person when the process server has gone to its offices,

7

made proper inquiry of the defendant's own employees, and delivered the summons according to their directions").

Here, Plaintiff served Allstate by delivering a copy of the Summons and Complaint on "Jodie Irwin." (DE 14.) The affidavit of service states that "[s]ervice was accepted by Jodie Irwin, who accepted legal service as an authorized representative for Allstate Insurance Company." *Id.* In New York, a process server's affidavit of service establishes a prima facie case that service was affected or attempted in the manner described therein, and thus, in the absence of contrary facts, it is presumed that Allstate was properly served. *See Old Republic Ins. Co.*, 301 F.3d at 57. Accordingly, this Court has personal jurisdiction over Allstate.

### B. Subject Matter Jurisdiction

Plaintiff asserts that the Court has original subject matter jurisdiction over Plaintiff's ADEA claims pursuant to federal-question jurisdiction under 28 U.S.C. § 1331, civil-rights jurisdiction under §§ 1343(3) and 1343(4), and supplemental jurisdiction over Plaintiff's state law claim pursuant to 28 U.S.C. § 1367. (DE 2 at ¶ II-IV.)

"A plaintiff properly invokes § 1331 jurisdiction when . . . a colorable claim 'arising under' the Federal Constitution or laws" is pleaded. *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 501 (2006). A case arises under federal law if a well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law. *See Empire Healthchoice Assur., Inc. v. McVeigh*, 547 U.S. 677, 689–90 (2006). Plaintiff clearly alleges in his Complaint that he seeks redress for the violation of his rights under the ADEA, and thus properly establishes jurisdiction under § 1331.[4]

---

[4] Section 1343(3) confers jurisdiction on the district courts "to redress the deprivation, under color of State law . . . of any right . . . secured by the Constitution . . . or by any Act of Congress providing for equal rights of citizens . . . ." 28 U.S.C. § 1343(3). Section 1343(4) confers jurisdiction over

8

The Court also has discretion to exercise supplemental jurisdiction over state law claims inasmuch as the claims are so related to the pending federal claims that "they form part of the same case or controversy." 28 U.S.C. § 1367(a). A state law claim forms part of the same controversy if it and the federal claim "derive from a common nucleus of operative fact." *Briarpatch Ltd., L.P v. Phoenix Pictures, Inc.*, 373 F.3d 296, 308 (2d Cir. 2004). Here, all of Plaintiff's claims unquestionably derive from a common nucleus of fact as his federal claim. Indeed, Plaintiff essentially pleads both claims as one, and each stemming from Plaintiff's allegedly wrongful termination from Allstate. (*See* DE 1.) Thus, the Court can, and should, exercise in its discretion to hear Plaintiff's supplemental state law claim.

## II. PROCEDURAL COMPLIANCE

Local Civil Rule 7.1 requires motions to include a notice of motion, memorandum of law, and supporting affidavits/exhibits containing any necessary factual information for the decision of the motion. E.D.N.Y. Local R. 7.1(a)(1) - (3). Local Civil Rule 55.2 requires that a party moving for default judgment append to its application the (1) Clerk's certificate of default, (2) a copy of the claim to which no response has been made, (3) a proposed form of default judgment, and that all papers submitted to the Court under Rule 55.2(b) be mailed to the party against whom a default is sought at the last known address of such party, with proof of mailing filed with the Court. E.D.N.Y. Local R. 5.52(b) - (c). "The movant must follow the procedure for entry of a default judgment as set forth in Federal Rule of Civil Procedure 55 as well as in Local Civil Rule 55.2."

---

claims "under any Act of Congress providing for the protection of civil rights." 28 U.S.C. § 1343(4). Sections 1343(3) and (4) are jurisdictional statutes applicable to state and local governmental defendants, private parties cloaked with the authority of state and private parties engaged in a conspiracy with state or local officials, and thus are inapplicable here. Whether jurisdiction exists under these statutes, however, is of no consequence here because Plaintiff has sufficiently established jurisdiction under § 1331.

9

*Guanglei Jiao v. Shang Shang Qian Inc.,* No. 18CIV5624ARRVMS, 2020 WL 6370148, at *7 (E.D.N.Y. Aug. 11, 2020), *report and recommendation adopted,* No. 18CV5624ARRVMS, 2020 WL 5105063 (E.D.N.Y. Aug. 31, 2020).

Here, Plaintiff filed the subject motion for default (DE 18) including a notice of motion (DE 18), affirmation in support (DE 18-1), memorandum in support (DE 18-2); affidavit in support by Lugo (DE 18-3), and affirmation of service demonstrating service of the motion and all supporting documents on Allstate on December 29, 2021 (DE 18-4). However, notably absent from Plaintiff's motion is the Clerk's certificate of default, a copy of the Complaint, and a proposed form of default judgment. In other words, Plaintiff failed to comply with Local Rule 55.2 in its entirety.

As harsh at it may seem, the courts in this District have repeatedly held that a movant's failure to comply with Local Rule 55.2 warrants denial of default judgment application. *See e.g. Pruco Life Ins. Co. of New Jersey v. Est. of Locker,* No. 12-CV-882 (ENV) (RML), 2012 WL 3062754, at *1 (E.D.N.Y. July 23, 2012) ("The motion is denied as to both defendants for failure to comply with Local Civil Rule 55.2(b), which requires the motion to include a copy of the Clerk's certificate of default"); *Apex Mar. Co. v. Furniture, Inc.*, No. 11-CV-5365 (ENV) (RER), 2012 WL 1901266, at *1 (E.D.N.Y. May 18, 2012) (same); *Bhagwat v. Queens Carpet Mall, Inc.*, No. 14 Civ. 5474 (ENV) (PK), 2015 WL 13738456, at *1 (E.D.N.Y. Nov. 24, 2015) ("Where the movant is represented by counsel ... a motion for default judgment will not be granted unless the party making that motion adheres to certain local and individual rules"); *Candelaria v. Erickson*, No. 01CIV.8594 (LTS) (RLE), 2005 WL 1529566, at *14 (S.D.N.Y. June 28, 2005) ("Plaintiff's submissions in support of his motion do not include the clerk's certificate of default or a proposed

10

form of a judgment. . . Accordingly, Plaintiff's motion for a default judgment as to Erickson is denied. . .").

The Court finds no reason to veer from the mandate of the rules or precedent here. In light of Plaintiff's complete failure to comply with Local Rule 55.2(b), the undersigned respectfully recommends that Plaintiff's motion for default be denied.

## III.   LIABILITY

If the Court were to look past the procedural infirmities of Plaintiff's motion outlined above, and proceed to reach the merits, then for the reasons that follow Plaintiff is still not entitled to default judgment because of his failure to exhaust his administrative remedies before the Equal Employment Opportunity Commission ("EEOC"). The following analysis is provided so that in the event the reviewing District Judge, upon review, disagrees as to the undersigned's conclusions on the motion's procedural deficiencies, the Court may nevertheless proceed to review the merits of the application.

### A. Was There Exhaustion of Administrative Remedies Through the EEOC?

It is well settled that a claimant may bring claims under the ADEA in federal court *only if* he has filed a timely complaint with the EEOC. [5] *Legnani v. Alitalia Linee Aeree Italiane, S.P.A*,

---

[5] Some courts have held that a Plaintiff's failure to file an EEOC charge prior bringing an ADEA action prevents the court from having subject matter jurisdiction over the action. *Sundaram v. Brookhaven Nat. Lab'ys*, 424 F. Supp. 2d 545, 567 (E.D.N.Y. 2006) ("Thus, a district court only has jurisdiction to hear [ADEA] claims where they were either included in an EEOC charge or are based on conduct subsequent to the charge which is 'reasonably related' to that alleged in the EEOC charge"); *Hansen v. Danish Tourist Bd.*, 147 F. Supp. 2d 142, 154 (E.D.N.Y. 2001) ("[A] district court has subject matter jurisdiction over ADEA claims only if the plaintiff first alleged those claims in an EEOC charge"). However, while still precondition to filing an ADEA suit, the Second Circuit has clarified that the timely filing of an EEOC charge prior to bringing an ADEA action is not jurisdictional in nature. *Holowecki v. Federal Exp. Corp.*, 440 F.3d 558, 565 (2d Cir.2006) ("ADEA's time limits, which are subject to equitable modification, are not jurisdictional in nature").

274 F.3d 683, 686 (2d Cir. 2001) ("Under both Title VII and the ADEA, a claimant may bring suit in federal court only if she has filed a timely complaint with the EEOC and obtained a right-to-sue letter"); *Wurtzburger v. Koret*, No. 16-CV-7897 (KMK), 2018 WL 2209507, at *4 (S.D.N.Y. May 14, 2018) ("Under the ADEA, a claimant may bring suit in federal court only if he or she has filed a complaint with the EEOC "within 300 days after the alleged unlawful practice occurred"); *Spruill v. NYC Health & Hosp.*, No. 06 CIV. 11362, 2007 WL 2456960, at *2 (S.D.N.Y. Aug. 23, 2007), *aff'd sub nom. Spruill v. New York City Health & Hosps. Corp.*, 367 F. App'x 269 (2d Cir. 2010) ("A plaintiff must exhaust his administrative remedies with the EEOC or an authorized agency before filing. . . ADEA claims in federal court"). "Exhaustion of administrative remedies through the EEOC is an essential element of the. . . ADEA statutory scheme[] and, as such, a precondition to bringing such claims in federal court." *Tanvir v. New York City Health & Hosps. Corp.*, 480 F. App'x 620, 621 (2d Cir. 2012); *Legnani*, 274 F.3d at 686.

Here, Plaintiff did not satisfy this precondition to filing this federal suit. Indeed, nowhere in the record—in Plaintiff's Complaint, motion for default, or otherwise—does Plaintiff state that he brought his age discrimination claim, or any "reasonably related," claim[6] before the EEOC. Plaintiff's failure to do so is fatal to Plaintiff's ADEA claim. *See Tanvir*, 480 F. App'x at 621;

---

[6] Even if Plaintiff had not filed an EEOC charge with respect to the claims alleged in the Complaint, he may have still been able to pursue them in federal court if they were "reasonably related" to claims brought before the EEOC. *Tanvir*, 480 F. App'x at 621 ("However, a claim that was not presented to the EEOC may still be pursued where the claim is "reasonably related" to the claims that were brought before the agency"); *Rusis v. Int'l Bus. Machines Corp.*, 529 F. Supp. 3d 178, 199 (S.D.N.Y. 2021) ("In addition to claims that are expressly alleged, a timely filed EEOC charge also satisfies the exhaustion requirement for any claims that are "reasonably related" to conduct alleged in the EEOC charge"). This exception is inapplicable here where Plaintiff failed to bring a complaint before the EEOC altogether.

12

*Wurtzburger*, 2018 WL 2209507, at *4. Accordingly, it is respectfully recommended that the motion for default be denied and Plaintiff's ADEA claim be dismissed.[7]

Plaintiff's NYHRL claim, while analytically identical to an ADEA claim, is not limited by any administrative exhaustion requirement. *See Garnett-Bishop v. New York Cmty. Bancorp, Inc.*, No. 12-CV-2285, 2014 WL 5822628, at *23 (E.D.N.Y. Nov. 6, 2014). Indeed, N.Y. Exec. Law § 297(9) provides a right of action against unlawful discriminatory practices, and "by the terms of the statute ... the NYHRL ... claims, once brought before the NYSDHR, may not be brought again as a plenary action in another court." *York v. Ass'n of Bar of City of New York*, 286 F.3d 122, 127 (2d Cir. 2002). In other words, a plaintiff may choose to bring a NYHRL claim before a state court or pursue administrative remedies, but he cannot do both. *Wurtzburger*, 2018 WL 2209507, at *5.

However, as discussed *supra*, this Court's jurisdiction over Plaintiff's NYHRL claim is supplemental. *See supra* Section I.B.; *see* 28 U.S.C. § 1367(c)(3). "District courts may decline to exercise supplemental jurisdiction over a claim if the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." *Pension Ben. Guar. Corp. v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 727 (2d Cir.2013) (citations and internal

---

[7] It is worth noting that ADEA claims are only timely if the Plaintiff files a claim with the EEOC within 300 days of the discriminatory conduct. *Mauro v. NYC Transit Auth.*, No. 09 CIV 4732 DLC, 2010 WL 1424009, at *2 (S.D.N.Y Apr. 9, 2010). Plaintiff alleges he was terminated on January 31, 2017, well over 300 days prior to his filing of the Complaint on December 20, 2019. And so, even if Plaintiff were to attempt file an EEOC charge today, it would likely be dismissed as untimely. *See id.*

13

quotation marks omitted). Here, in light of the dismissal of Plaintiff's federal claim, it is respectfully recommended that the Court decline to exercise supplemental jurisdiction over Plaintiff's remaining state law claim and dismiss the same, without prejudice, to re-file in state court. *See Ehrbar v. Forest Hills Hosp.*, 131 F. Supp. 3d 5, 37 (E.D.N.Y. 2015); *Missick v. City of New York*, 707 F. Supp. 2d 336, 357 (E.D.N.Y. 2010).

If the Court excuses the procedural non-compliance with the Local Rules and the failure to exhaust, then the undersigned considers the merits of the age discrimination claims below.

### B. Has Age Discrimination under the ADEA and NYHRL Been Established?[8]

To establish a prima facie case of age discrimination under the ADEA and NYHRL, a plaintiff must show that (1) he was within the protected age group (at least 40 years old)[9], (2) he was qualified for the position (3) he experienced adverse employment action and (4) such action occurred under circumstances giving rise to an inference of discrimination. *Ehrbar*, 131 F. Supp. at 21. "In addition, to satisfy the burden of persuasion on an ADEA claim, plaintiff must prove 'by a preponderance of the evidence, that age was the 'but-for' cause behind the employer's adverse decision, and not merely one of the motivating factors.'" *Santiago v. Crown Heights Ctr. for Nursing & Rehab.*, No. 15CV4381DLICLP, 2017 WL 9482107, at *13 (E.D.N.Y. Feb. 24,

---

[8] The analysis for a claim of age discrimination under the ADEA and the NYHRL are identical. *See Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 106 (2d Cir. 2010) ("The law governing ADEA claims has been held to be identical to that governing claims made under the NYHRL"); *Wurtzburger*, 2018 WL 2209507 at *6 (S.D.N.Y. May 14, 2018) ("The analysis of Plaintiff's age discrimination claim under the NYSHRL would be identical to conducting a merits analysis of his unexhausted claims under the ADEA").

[9] *O'Connor v. Consol. Coin Caterers Corp.*, 517 U.S. 308, 312 (1996) ("The discrimination prohibited by the ADEA is discrimination 'because of [an] individual's age' . . . though the prohibition is 'limited to individuals who are at least 40 years of age") (citing 29 U.S.C. §§ 623(a)(1); 631(a)).

2017) (quoting *Hrisinko v. New York City Dep't of Educ.*, 369 Fed. Appx. 232, 234 (2d Cir. 2010). "The condition that a plaintiff's age must be the 'but for' cause of the adverse employment action is not equivalent to a requirement that age was the employers only consideration, but rather that the adverse employment action[ ] would not have occurred without it." *Delaney v. Bank of Am. Corp.*, 766 F.3d 163, 169 (2d Cir. 2014).

Here, Plaintiff, a 51-year-old male, has alleged in his Complaint and in a sworn affidavit submitted in support of his motion, that he began being targeted by Allstate because of his age in 2014 and was ultimately terminated on or about January 31, 2017. (DE 1 at ¶¶1, 5; DE 18-3 at ¶ 9, 20.) Therefore, at all relevant times Plaintiff was within the protected age group, *i.e.* over the age of 40. Plaintiff worked for Allstate for approximately 26 years, starting as a personal line representative and moving through the ranks as a clerical manager, total loss representative, agent in the centralized theft department, adjuster, and working the negotiation desk in the casualty department. (DE 1 at ¶ 4.) Plaintiff held the position at the negotiation desk for approximately 17 years up and until his termination. (*Id.*) Plaintiff alleges that the unfair treatment he endured prior to his termination, and which ultimately led to his termination, was an "overall practice[] in the office" of age discrimination. (*Id.* at ¶ 10.) Plaintiff alleges that Allstate "had a pattern and practice of removing [] older co-workers." (*Id.* at 18.) Plaintiff asserts that representatives tenured over 12 years were referred to as "sunsetters" and were forced to train younger employees to become their replacements. (DE 1 at ¶ 10; DE 18-3 at ¶ 13.) Younger representatives were given less complex, single party files, whereas older representatives, such as Plaintiff, would get more complex, multi-party files. (DE 1 at ¶ 8; DE 18-3 at ¶¶ 11-12.) Often, Allstate would take files that the older representatives had worked on and give them to younger employees. (DE 1 at ¶¶ 8-9; DE 18-3 at ¶ 11.) As a result, the younger employees would get the credit for closing out files

15

the older representatives had worked on. (*Id.*) Plaintiff alleges that unlike younger employees, Plaintiff was the victim of the management's targeted reviews, was almost always selected for discretionary progress meetings, had his emails reviewed and calls listened to by management, and was not permitted to attend an offsite work program while most other employees were allowed to attend. (DE 1 at ¶¶ 10-17; DE 18-3 at ¶¶ 14,15, 19.) Finally, Plaintiff alleges that several other older employees, were either similarly terminated or voluntarily retired because of the same targeted harassment. (DE 1 at 18.) Based on these facts, the Court is satisfied that Plaintiff has established the first three elements of a *prima facie* age discrimination claim.

As to the fourth element, "[a] plaintiff can raise an inference of age discrimination by showing that she (1) was similarly situated to other younger employees, and (2) was treated less favorably than those employees." *Ehrbar*, 131 F. Supp. at 21. The other, younger employees need not be "identical" to the plaintiff, just "similarly situated in all material respects," which may vary from case to case but generally include things such as being (1) subject to the same performance evaluation and discipline standards and (2) engaged in comparable conduct. *Id.*

Here, Plaintiff has alleged sufficient facts to establish an inference of age discrimination. Plaintiff alleges that the younger employees were similarly situated in that they were performing the same job duties and subject to the same performance evaluations in the form of "monthly progress meetings" and customer surveys. (DE 1 at ¶¶ 12-13.) Younger employees were favored insofar as older representatives, such as Plaintiff, would be assigned the complex files while less complex files would be assigned to younger representatives. (*Id.* at 9.) Allstate took files that were essentially completed by the work older representatives and gave them to younger representatives, inflating the younger representative's success and leaving older representatives, such as the Plaintiff, to be unproportionally chastised for having unresolved files. (*Id.* at ¶ 8.)

16

Plaintiff alleges that he and other older representatives were referred to as "sunsetters" in the office by management.[10] (*Id.* at ¶ 10.) While all representatives were subject to customer surveys, only younger representatives were praised for receiving a "10" on a customer survey whereas if Plaintiff received a "10," it would go unacknowledged. (*Id.* at ¶ 13.) In fact, unlike his younger counterparts, Plaintiff's manager went through Plaintiff's work emails and unexpectedly listened in on Plaintiff's calls, constantly critiquing his work. (*Id.* at 15.)

Once a plaintiff makes out a prima facie case, the burden shifts to the defendant employer to provide a legitimate, nondiscriminatory business rationale for its actions. *Santiago*, 2017 WL 9482107 at *14 (citing the burden shifting framework set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973). "If the employer articulates such a reason, a presumption of age discrimination dissolves, and the burden shifts back to the plaintiff to prove that the employer's stated reasons are merely pretextual and that age discrimination was the true reason for the adverse employment action....." *Id.* (quoting *Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 466 (2d Cir. 2001)). However, where as here, Plaintiff has made out "a prima facie case of age discrimination and the defendant has failed to appear to present a nondiscriminatory business reason for its conduct, the allegations in the [Complaint] are deemed to be true. *Santiago*, 2017 WL 9482107 at *14.

Based on the foregoing, the Court finds that Plaintiff has stated a valid claim of age discrimination under the ADEA and NYHRL. Therefore, it is respectfully recommended that in

---

[10] The term "sunsetter" is sometimes viewed as a patronizing term for those considered advanced in age and either still working, or at the stage in life between retirement and becoming elderly. *See What to call the time of life between work and old age?*, THE ECONOMIST (July 6, 2017), https://www.economist.com/leaders/2017/07/06/what-to-call-the-time-of-life-between-work-and-old-age (discussing the branding of age categories); *see also* Meriam-Webster, found at https://www.merriam-webster.com/dictionary/sunset ("a period of decline, *especially:* old age").

17

the event the Court were to look past the procedural infirmities of Plaintiff's motion and the fact that Plaintiff's claims are barred for failure to exhaust his administrative remedies, that Plaintiff's motion for default would otherwise be granted.

## IV. DAMAGES

"Allegations of liability are deemed admitted upon default; allegations of damages are not." *Antoine v. Brooklyn Maids 26, Inc.*, 489 F. Supp. 3d 68, 90 (E.D.N.Y. 2020). "Rather, a court must ensure that there is an adequate basis for the damages sought by a plaintiff before entering judgment in the amount demanded." *Id.* The Court "may conduct hearings or make referrals ... when, to enter or effectuate judgment, it needs to ... determine the amount of damages [or] establish the truth of any allegation by evidence." *Tenecora v. Ba-kal Rest. Corp.*, No. CV187311DRHAKT, 2020 WL 8771256, at *18 (E.D.N.Y. Nov. 30, 2020) (quoting Fed. R. Civ. P. 55(b)(2).

Here, by his Complaint, Plaintiff seeks "all compensatory, emotional, psychological and punitive damages, liquidated damage, injunctive relief, and any other damages permitted by law pursuant to the above referenced causes of action," including reasonable attorneys' fees. (DE 1 at 7.) In his motion for default, Plaintiff requests an inquest hearing on damages, including damages in the form of back pay, emotional damages, and costs of litigation. (DE 18-2 at 6-7.) Plaintiff submits no factual support, such as affidavits or documents, to allow the Court to determine the amount of damages at this juncture. And so, should the Court sustain any portion of Plaintiff's Complaint, it is respectfully recommended that the Court direct that an inquest hearing be held to determine damages. *See e.g. Villarrubia v. La Hoguera Paisa Rest. & Bakery Corp.*, No. 18CV4929AMDPK, 2020 WL 1676488, at *1 (E.D.N.Y. Apr. 6, 2020); *Garcia v. Comprehensive Ctr.*, LLC, No. 17-CV-8970 (JPO), 2018 WL 3918180, at *6 (S.D.N.Y. Aug. 16, 2018).

## **CONCLUSION**

Based on the foregoing, the undersigned respectfully recommends that Plaintiff's motion for a default judgment be denied.

## **OBJECTIONS**

A copy of this Report and Recommendation is being electronically served on counsel. Any written objections to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of service of this Report. 28 U.S.C. § 636(b)(1) (2006 & Supp. V 2011); Fed. R. Civ. P. 6(a), 72(b). Any requests for an extension of time for filing objections must be directed to the district judge assigned to this action prior to the expiration of the fourteen (14) day period for filing objections. Failure to file objections within fourteen (14) days will preclude further review of this Report and Recommendation either by the District Court or the Court of Appeals. *Thomas v. Arn*, 474 U.S. 140, 145 (1985) ("a party shall file objections with the district court or else waive right to appeal"); *Caidor v. Onondaga Cnty.*, 517 F.3d 601, 604 (2d Cir. 2008) ("failure to object timely to a magistrate's report operates as a waiver of any further judicial review of the magistrate's decision"); *see Monroe v. Hyundai of Manhattan & Westchester*, 372 F. App'x 147, 147–48 (2d Cir. 2010) (same).

Dated: Central Islip, New York
August 10, 2022

Respectfully recommended,

/s/ *James M. Wicks*
JAMES M. WICKS
United States Magistrate Judge